**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CODY CHANDLER, | CASE NO.: 1:20-CV-03587 |
| Plaintiff, | |
| *vs*. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| NCB MANAGEMENT SERVICES, INC. and JOHN DOES 1-25, | |
| Defendants. | |

This action is brought by Plaintiff, CODY CHANDLER against Defendants, NCB

MANAGEMENT SERVICES, INC. ("NCB") and JOHN DOES 1-25 ("DOES"), based on the

following:

## I.    PRELIMINARY STATEMENT

1.    Plaintiff brings this action individually and on behalf of all others similarly

situated for the illegal practices of Defendants, when attempting to collect an alleged debt from

him, in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.

2.    Such practices include attempting to collect consumer debts by engaging in

conduct prohibited by, or failing to engage in conduct required by, the FDCPA.

3.    The FDCPA regulates the behavior of "debt collectors" (including collection

agencies, collection attorneys, debt buyers) when attempting to collect a consumer debt.

Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection

practices by many debt collectors" which "contribute to a number of personal bankruptcies,

marital instability, loss of jobs, and invasions of individual privacy." 15 U.S.C. § 1692(a). The

FDCPA was expressly adopted "to eliminate abusive debt collection practices by debt collectors,

to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

4.      The FDCPA, at 15 U.S.C. § 1692c, prohibits when and with whom a debt collector may communicate when attempting to collect a debt and, at 15 U.S.C. § 1692b, limits communications with third parties to the collection of "location information."

5.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Second Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

6.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

7.      When collecting or attempting to collect a debt, the FDCPA bars a debt collector's use of: (a) false, deceptive, or misleading means or representations; and (c) unfair or unconscionable means. 15 U.S.C. §§ 1692d, 1692e, and 1692f. Each of those Sections contain a list of specific *per se* violations but they are nonexclusive and do not limit the general application of each Section's broad prohibitions.

8.    When the collection process starts, the FDCPA requires a debt collector to provide a consumer with basic debt information and the consumer's right to debt-verification. 15 U.S.C. § 1692g.

9.    When a debt collector fails to comply with the FDCPA "with respect to any person," it "is liable to such person in an amount equal to the sum of" "any actual damage sustained," "additional" or statutory damages, costs, and reasonable attorneys' fees. 15 U.S.C. § 1692k(a). Statutory damages are limited: a plaintiff may recover no more than $1,000, and the class may recover up to $500,000 or 1% of the debt collector's net worth, whichever it less. 15 U.S.C. § 1692k(a)(2)(A)-(B).

10.    Plaintiff seeks, both individually and on behalf of all others similarly situated, such relief as is allowed under FDCPA including, without limitation, statutory damages, attorney fees and costs.

## II.    PARTIES

11.    CHANDLER is a natural person who at all times relevant to this lawsuit was a citizen of, and resided in, the Borough of Brooklyn, Kings County, New York.

12.    NCB, a for-profit corporation formed under the laws of the State of Pennsylvania, is a New York Foreign Business Corporation.

13.    NCB maintains its principal place of business at 1 Allied Drive, Trevose, Pennsylvania 19053.

14.    NCB's registered agent in New York is C T Corporation System, 28 Liberty Street, New York, NY 10005.

15.     DOES are sued under fictitious names as their true names and capacities are yet

unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and

capacities of the DOE defendants once they are ascertained.

### III.    JURISDICTION & VENUE

16.     Jurisdiction of this Court arises under 15 U.S.C. §1692k(d) and 28 U.S.C. §§

1331 and 1337.

17.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b)

because a substantial part of the events giving rise to Plaintiff's claims occurred within this

federal judicial district, and because Defendants are each subject to personal jurisdiction in the

State of New York at the time this action was commenced.

### IV.    FACTS RELATING TO DEFENDANT

18.     NCB regularly engages in the collection or attempted collection of defaulted

consumer debts owed to others.

19.     NCB is a business, the principal purpose of which is the collection of defaulted

consumer debts.

20.     In attempting to collect debts, NCB uses instruments of interstate commerce such

as the mails, telephone, and the internet.

21.     CHANDLER believes, and on that basis alleges, and based on the advice of

counsel, that DOES are natural persons and/or business entities all of whom reside or are located

within the United States who personally created, instituted and, with knowledge that such

practices were contrary to law, acted consistently with, conspired with, engaged in, and oversaw

the violative policies and procedures used by the employees of NCB that are the subject of this

Complaint. DOES personally controlled, and engaged in, the illegal acts, policies, and practices

used by NCB and, therefore, are personally liable for all the wrongdoing alleged in this

Complaint.

## V.    FACTS RELATING TO PLAINTIFF

22.    NCB mailed, or caused to be mailed, a letter dated October 8, 2019 (the "10/8/19

Letter") to CHANDLER.

23.    A true and correct copy of the 10/8/19 Letter is attached as *Exhibit A*, except that

portions of the Letter are redacted.

24.    On information and belief, the 10/8/19 Letter was mailed on or after the Letter's

date.

25.    The 10/8/19 Letter concerned an obligation owed, or allegedly owed, to Bank of

America, N.A. ("BOA") on a charged-off credit card account (the "Debt").

26.    The Debt arose out of one or more transactions in which the money, property,

insurance, or services that were the subject of the transactions were primarily for personal,

family, or household purposes.

27.    CHANDLER has never incurred any financial obligations in any business

transaction or in any transactions other than ones which were for personal, family, or household

purposes. Either NCB or the Debt's creditor is presumed to have more specific information about

the Debt.

28.    On information and belief, the BOA credit card account was governed by North

Carolina law.

29.    The Debt was placed with NCB for purposes of collection.

30.    The 10/8/2019 Letter contended that CHANDLER owed the Debt.

31.     NCB mailed, or caused to be mailed, a letter dated November 11, 2019 (the "11/11/19 Letter") to CHANDLER.

32.     A true and correct copy of the 11/11/19 Letter is attached as *Exhibit B*, except that portions of the Letter are redacted.

33.     The 11/11/19 Letter also contended that CHANDLER owed the Debt.

34.     NCB mailed, or caused to be mailed, a letter dated December 12, 2019 (the "12/12/19 Letter") to CHANDLER.

35.     A true and correct copy of the 12/12/19 Letter is attached as *Exhibit C*, except that portions of the Letter are redacted.

36.     The 12/12/20 Letter also contended that CHANDLER owed the Debt.

37.     On information and belief, CHANDLER's last payment on the BOA credit card account was in November 2018.

38.     On information and belief, CHANDLER first failed to pay the BOA credit card account as provided by the BOA agreement in December 2018.

39.     At the latest, the statute of limitations on any lawsuit to collect the Debt began to run on the day in December 2018 when CHANDLER did not timely make a payment to BOA.

40.     The New York statute of limitations on credit card accounts is six years.

41.     The North Carolina statute of limitations on credit card accounts is three years.

42.     When NCB sent *Exhibits A-C* ("the Letters") to CHANDLER ten to twelve months after he first defaulted on his BOA account, the statute of limitations had not expired under New York law.

43.     When NCB sent *Exhibits A-C* ("the Letters") to CHANDLER ten to twelve

months after he first defaulted on his BOA account, the statute of limitations had not expired

under North Carolina law.

44.     Yet the Letters state in relevant part that the statute of limitations had run:

> For New York City Residents: WE ARE REQUIRED BY
> LAW    TO    GIVE    YOU    THE    FOLLOWING
> INFORMATION ABOUT THIS DEBT. The legal time
> limit (statute of limitations) for suing you to collect this debt
> has expired. However, if somebody sues you anyway to try
> to make you pay this debt, court rules REQUIRE  YOU to
> tell the court that the statute of limitations has expired to
> prevent the creditor from obtaining a judgment. Even
> though the statute of limitations has expired, you may
> CHOOSE to make payments. However, BE AWARE: if you
> make a payment, the creditor's right to sue you to make you
> pay the entire debt may START AGAIN.

45.     NCB's statement that the statute of limitations had run was false, misleading, and

deceptive to Plaintiff and the least sophisticated consumer because the statute of limitations had

not run.

46.     CHANDLER believed after reading the above paragraph that he did not need to

worry about being sued on the Debt.

47.     The least sophisticated consumer would understand from reading the above

paragraph that she or he was not at risk of being sued on the Debt.

48.     The least sophisticated consumer would conclude from reading the above

paragraph that she or he could allocate their limited funds towards resolving a different debt, one

in which they believed legal action was a genuine possibility.

49.     The language quoted above might discourage the least sophisticated consumer

from making a payment on the debt for fear of restarting the statute of limitations.

50.     Since the statute of limitations had not expired, a consumer who did not take any

action to pay the debt thereby increased the likelihood that she or he would be sued on their debt.

51.     On the second page of the Letters, NCB cast doubt on whether the statute of

limitations had in fact run:

> We are required by regulation of the New York State
> Department of Financial Services to notify you of the
> following information. This information is NOT legal
> advice: Your creditor or debt collector believes that the legal
> time limit (statute of limitations) for suing you to collect this
> debt *may* have expired (emphasis added).

52.     After reading the above paragraph, CHANDLER was confused as to whether or

not he could be sued on the Debt.

53.     After reading the above paragraph, the least sophisticated consumer would be

confused as to whether or not she or he would or could be sued.

54.     The running of the statute of limitation is a material fact as it affects the least

sophisticated consumer's decision to pay the debt. Timothy E. Goldsmith & Natalie Martin,

*Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting*

*Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010).

55.     NCB deprived CHANDLER of truthful, non-misleading, information in

connection with it's attempt to collect the Debt.

56.     CHANDLER experienced confusion, concern, uncertainty, and stress at reading

the Letters.

## VI.    CLASS ALLEGATIONS

57.     The Letters are form letters. Specifically, the Letters were created by merging

electronically-stored information specific to the Debts (including but not limited to the

addressee's name and address) with predetermined electronically-stored text and any graphics

defined by a template, and printing the result. In effect, the Debt-specific information is used to populate the blanks in the template to produce the Letters.

58.    NCB's conduct is consistent with its policies and practices when attempting to collect debts from consumers. Consequently, this action is brought by Plaintiff, both individually and on behalf of similarly situated individuals, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

59.    ***Class Definition.*** Plaintiff seeks to certify a Class and a Subclass. The Class is defined as:

> All natural persons to whom NCB Management Services, Inc. mailed a written communication in the form of either ***Exhibit A***, ***B***, or ***C*** to a New York address during the Class Period beginning on July 10, 2019 and ending on July 31, 2020.

60.    The Subclass is defined as:

> All natural persons to whom NCB Management Services, Inc. mailed a written communication in the form of either ***Exhibit A***, ***B***, or ***C*** to a New York address to collect a Bank of America credit card debt during the Class Period beginning on July 10, 2019 and ending on July 31, 2020.

61.    Class and Subclass members' identities are readily ascertainable from NCB's business records and the business records of those entities on whose behalf NCB collects debts.

62.    ***Class Claims.*** The Class and Subclass Claims are the claims which each Class and Subclass member may have for any violation of the FDCPA arising from NCB having sent a written communication in the same form as ***Exhibits A-C***.

63.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 because there is a well-defined community interest in the litigation:

(a)     *Numerosity.* On information and belief, the Class and Subclass are so numerous that joinder of all members would be impractical and include at least 40 members.

(b)     ***Common Questions Predominate.*** Common questions of law and fact exist as to all members of the Class and Subclass and those questions predominate over any issues involving only individual Class and Subclass members because those questions concern the same conduct by Defendant with respect to each Class and Subclass member.

(c)     ***Typicality.*** The claims of Plaintiff are typical of the Class and Subclass members because those claims arise from a common course of conduct engaged in by Defendant.

(d)     ***Adequacy.*** Plaintiff will fairly and adequately protect the interests of the Class and Subclass members insofar as he has no interests that are adverse to those of the Class and Subclass members. Moreover, Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions.

(e)     ***Superiority.*** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

64.     Based on discovery and further investigation (including, but not limited to, disclosure by Defendant of Class and Subclass size and net worth), Plaintiff may seek class certification: (a) only as to particular issues as permitted under NY CLS CPLR § 906, (b) using a modified definition of the Class or Subclass, or the claims of the Class or Subclass; and (c) a different Class Period.

## VII.    COUNT ONE - VIOLATION OF THE FDCPA

65.     The factual allegations in the preceding paragraphs are realleged and incorporated by reference.

66.     NCB is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

67.     DOES are "debt collectors" as defined by 15 U.S.C. § 1692a(6).

68.     The Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

69.     CHANDLER is a "consumer" as defined by 15 U.S.C. § 1692a(3).

70.     *Exhibit A* is a "communication" as defined by 15 U.S.C. § 1692a(2).

71.     *Exhibit B* is a "communication" as defined by 15 U.S.C. § 1692a(2).

72.     *Exhibit C* is a "communication" as defined by 15 U.S.C. § 1692a(2).

73.     The use and mailing of *Exhibits A, B*, or *C* by NCB violated the FDCPA in one or more of the following ways:

(1)     Using a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e;

(2)     Falsely misrepresenting the character, amount, or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A);

(3)    Using a false representation or deceptive means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692e(10); and

(4)    Using unfair means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f.

## VIII.   PRAYER FOR RELIEF

74.    WHEREFORE, Plaintiff demands judgment against NCB. Specifically, Plaintiff requests entry of an Order:

(1)    Certifying that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure including, but not limited to, defining the Class and Subclass and the Class claims, issues, or defenses, and appointing the undersigned counsel as class counsel;

(2)    Awarding statutory damages to Plaintiff and the Class pursuant to 15 U.S.C. § 1692k(a)(2);

(3)    Awarding actual damages to the Class pursuant to 15 U.S.C. § 1692k(a)(1);

(4)    Awarding an incentive payment to Plaintiff for his services on behalf of the Class;

(5)    Awarding attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3);

(6)    Awarding, to the extent the recovery of attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3) causes a negative tax consequence to Plaintiff and/or the Class, a sum sufficient to ameliorate such consequences; and

(7)      Providing for such other and further relief as may be just and proper.

## IX.   JURY DEMAND

75.      Trial by jury is demanded on all issues so triable.


Dated: August 25, 2020


                                        *s/Francis R. Greene*
                                        Francis R. Greene
                              Francis R. Greene
                              Alla Gulchina
                              STERN•THOMASSON LLP
                              150 Morris Avenue, 2nd Floor
                              Springfield, New Jersey 07081
                              Telephone (973) 379-7500
                              E-mail: Francis@SternThomasson.com
                              E-mail: Alla@ SternThomasson.com

                              Simon Goldenberg
                              LAW OFFICE OF SIMON GOLDENBERG PLLC
                              818 East 16th Street
                              Brooklyn, New York 11230
                              Telephone: (347) 640-4357
                              E-mail: simon@goldenbergfirm.com

                              *Attorneys for Plaintiff, Cody Chandler*